UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY DARCEL BROOKS #153447,                    Case No. 2:21-cv-00019

              Plaintiff,                    Hon.  Hala Y. Jarbou
                                          Chief U.S. District Judge

    v.

RYAN BOARD, et al.,

              Defendants.

_____/

## **REPORT AND RECOMMENDATION**

### I.  Introduction

This Report and Recommendation addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies.  (ECF Nos. 51 and 55.)

State Prisoner Terry Darcel Brooks is the only remaining Plaintiff in this case. The complaint was originally filed by twenty-four prisoners asserting that Defendants improperly responded to the COVID-19 pandemic at the Chippewa Correctional Facility (URF).  The Plaintiffs alleged that they had various medical conditions including hypertension, high cholesterol, asthma, Hepatitis C, and pre-diabetes, which made contracting COVID-19 more dangerous and potentially life threatening.  Plaintiffs alleged that Defendants failed to implement Michigan Department of Corrections (MDOC) COVID-19 policies and protocol at URF. Plaintiffs asserted that the Defendants' failure to follow MDOC COVID-19 protocol

subjected them to potential illness and death in violation of their Eighth Amendment rights.  On May 21, 2022, this Court issued a screening opinion and entered judgment dismissing the complaint for failure to state a claim.  (ECF Nos. 4 and 5.)

Brooks appealed the dismissal of the complaint and, on March 30, 2022, the Sixth Circuit vacated the judgment against him and remanded the case for further proceedings.  (ECF No. 14.)

Four defendants remain in the case.  They are MDOC Director Washington, URF Warden Horton, Corrections Officer (CO) Gierke and CO Burke.  Defendants argue that Brooks failed to exhaust his administrative grievance remedies.

Brooks argues that he did not have to exhaust his claims because he was in imminent danger of harm due to COVID-19 exposure *and* COVID-19 issues do not require exhaustion of administrative remedies.  Defendants failed to address the argument that the grievance remedies did not apply to the COVID-19 issues asserted by Brooks.   It is respectfully recommended that the Court deny Defendants' motion because a genuine issue of material fact exists on the issue of exhaustion of administrative remedies.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

1    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the PLRA, 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted

5

oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir.

2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at \*3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Analysis

Brooks did not exhaust administrative remedies before he filed this lawsuit. That is not in dispute.  But Brooks argues that a prisoner bringing a lawsuit raising COVID-19 issues does not need to first exhaust administrative remedies.  Brooks says that "Medical situations and IMMIENT DANGER situations such a COVID-19 virus <u>ARE NOT</u> required nor bound to pursue an administrative remedy when a[n] administrative remedy is **<u>NONE EXISTING</u>** for cases of imminent danger [that] could and did lead to death."  (ECF No. 61, PageID.643.)  Further, Brooks reasons that he did not have to exhaust administrative remedies because no grievance remedy exists for COVID-19 issues due the national emergency.  (*Id.*)

In general, "[t]he PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury."  *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004).  Moreover, a prisoner must exhaust available administrative remedies, even when the administrative process does not afford the prisoner the specific type of relief he seeks.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El*, 215 F.3d at 642; *Freeman*, 196 F.3d at 643.  Here, Brooks never attempted to exhaust any administrative remedies before he filed this lawsuit.

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

It is important to note that district courts in Michigan have analyzed whether an inmate had exhausted COVID-19 related claims or was thwarted by prison officials from pursuing administrative remedies. *See, e.g., Sango v. Fleury*, 2022 WL 2163519, *2 (6th Cir. May 4, 2022) (affirming dismissal due to inmate's failure to exhaust administrative remedies because of alleged threatening conduct, on claims involving the failure to follow COVID-19 protocols.); *Moses v. Campbell*, 2022 WL 2805145 (E.D. Mich. July 18, 2022) (dismissing on exhaustion grounds inmate's claim that prison officials failed to properly  implement COVID-19 safety procedures which caused his exposure to the virus); *Vorus v. Lewis*, 2023 WL 3128457 (W.D. Mich. Mar. 21, 2023) (dismissing on exhaustion grounds inmate's claim that a prison official failed to protect him from COVID-19 exposure and failed to provide adequate medical care) *Report and Recommendation adopted*, 2023 WL 3120881 (April 27, 2023); *Carson v. Artis*, 2022 WL 19521772 (W.D. Mich. Nov. 4, 2022) (dismissing on exhaustion grounds inmate's claim that prison officials failed to separate COVID-19 positive prisoners from other prisoners, like himself, who had tested negative) *Report and Recommendation adopted*, 2023 WL 2967835 (April 17, 2023).

In these cases, the courts analyzed whether the plaintiff had satisfied the PLRA's exhaustion requirement.  The implication of these rulings is that the exhaustion requirement applies in these cases.  Brooks, however, makes a different claim.  He essentially says that the exhaustion requirement should be set aside categorically for these cases.  The defense does not specifically address this point.

9

Some courts have recognized that under some circumstances, a court may be able to find that the grievance procedures were unavailable. *See Smith v. DeWine*, 476 F. Supp.3d 635, 656   (S.D. Ohio 2020) (stating that "[i]n light of the conflicting case law regarding the exhaustion requirement in this unprecedented pandemic the Court does not believe the Director has upheld her burden of showing that Plaintiffs failed to exhaust their administrative remedies and that doing so would not be a dead end in light of the pandemic.")  But other courts have refused to excuse the exhaustion requirement where the facts fail to support an inmate's claim that administrative remedies were unavailable. *Sowell v. TDCJ*, 2020 WL 2113603, at *3 (S.D. Tex., May 4, 2020) (dismissing inmate's COVID-19 claims for failing to exhaust because inmate failed to show imminent danger existed making the grievance process unavailable, but recognizing that "[w]here the circumstances present an imminent danger to an inmate, TDCJ's time-consuming administrative procedure, which TDJ may choose to extend at will, presents no 'possibility of some relief.'"); *United States v. Vence-Small*, 613 F. Supp.3d 653, 659 (D. Conn., 2020)[3] (finding the argument unpersuasive because Congress despite not have a crystal ball to "anticipate the extraordinary circumstances of the COVID-19 pandemic . . . . could well have foreseen that medical

---

[3]     The issue in that case was whether a court could waive exhaustion requirements on a federal prisoner's motion for a reduction of sentence due to the spreading of COVID-19.  The court recognized that some judges have waived exhaustion requirement. *Vence-Small*, 613 F. Supp.3d at 658-59 (citing *United States v. Russo*, 454 F. Supp.3d 270, 272-74 (S.D. N.Y. 2020) and *United States v. Haney*, 454 F. Supp.3d 316 (S.D. N.Y. 2020)).

10

or safety emergencies might arise" but "[s]till, Congress did not create an emergency exception to the exhaustion requirement.")

Importantly, Justice Sotomayor addressed this issue in an order denying a motion to vacate a stay of an injunction pending an appeal which required a Texas geriatric prison (where most prisoners were over 65 years old and lived in dormitory-style housing) to follow extensive COVID-19 protocols. *Valentine v. Collier*, 1140 S. Ct. 1598 (2020). Joined by Justice Ginsburg, Justice Sotomayor wrote that if "a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid-19, the procedures may be 'unavailable' to meet the plaintiff's purposes, much in the way they would be if prison officials ignored the grievances entirely." *Id.* at 1600-01. Justice Sotomayor stated that the Court was unable to determine the availability of the procedures because the "applicants did not attempt to avail themselves of the grievance process before filing suit." *Id.* at 1601.

The *Valentine* case suggests that the Court must first determine if the grievance procedures at issue were unavailable by addressing whether "a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid-19 . . . ." *Id.* at 1600.

The Court cannot make that determination based upon the record. Ultimately, it is Defendants' burden to establish that the exhaustion process was available to Brooks at the time his claims arose and that the grievance process available at that time was capable of responding to the rapidly spreading pandemic

in an effective manner.  Brooks says that no available administrative remedy existed due to the COVID-19 pandemic.  Defendants have completely failed to address that issue.  In the opinion of the undersigned, a genuine issue of material fact exists regarding whether the MDOC grievance procedures provided an available remedy for Brooks to pursue prior to filing this lawsuit.

## V.  Recommendation

It is respectfully recommended that the Court deny Defendants' motions for summary judgment because Defendants have not met their burden of establishing that Brooks failed to exhaust his available administrative remedies.  It is the undersigned's recommendation that there are genuine issues of material fact precluding summary judgment.  Those issues may be resolved at a bench trial on exhaustion, or they may be resolved by a jury.


Dated:   January 2, 2024                        /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).