UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY BROOKS, et al.,

    Plaintiffs,

v.

                             Case No. 2:21-cv-19

HEIDI WASHINGTON, et al.,              Hon. Hala Y. Jarbou

    Defendants.
_____/

## OPINION

This is a *pro se* civil rights action brought by Terry Brooks, an inmate in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983.  Brooks alleges that he was subject to unconstitutional conditions of confinement in violation of his Eighth Amendment rights during the COVID-19 pandemic.  Specifically, he asserts that officials at the Chippewa Correctional Facility (URF) failed to implement the MDOC's COVID policy, putting him at risk of contracting the disease, to which his health conditions made him particularly susceptible.  Defendants filed motions for summary judgment (ECF Nos. 51 and 55), asking the Court to dismiss Brooks' claims on the basis of exhaustion.  Before the Court is the magistrate judge's Report and Recommendation (R&R) recommending that the motions for summary judgment be denied.  Also before the Court are Defendants' motion for extension of time to file objections (ECF No. 65) and the objections to the R&R (ECF No. 67).

### I. BACKGROUND

Brooks and 23 other prisoners housed at URF filed this suit in 2021.  Initially, the prisoners were seeking class-action status.  They brought Eighth Amendment claims against four prison officials alleging that the officials were deliberately indifferent to the risk that COVID-19 posed

to their health and safety. (Compl. ¶¶ 3-4, ECF No. 1.) They also alleged that the MDOC's failure to follow its own administrative code and policy directives amounted to a due process violation. (*See id.* at 5-8.)

This Court dismissed the action for failure to state a claim. (*See* 05/21/2021 Op., ECF No. 4.) The Sixth Circuit reversed that opinion in part, holding that the Court improperly relied on MDOC supplied statistics and policy statements to show that it had implemented COVID control measures at URF. (*See* 03/30/2022 Op., ECF No. 14.) However, it upheld the Court's denial of class action status and dismissal of Brooks' due process claims. (*Id.*)

On remand, Brooks is the sole remaining plaintiff. Four defendants remain in the case. They are MDOC Director Heidi Washington, URF Warden Horton, Corrections Officer (CO) Gierke, and CO Burke.

Defendants moved for summary judgment on the basis that Brooks failed to exhaust his administrative remedies through the MDOC's grievance process, as required by MDOC policy and the PLRA, prior to filing suit.

## II. LEGAL STANDARD

### A. Review of Objections

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).

2

A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249 (citing *First Nat'l Bank of Ariz v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. ANALYSIS

**A. Motion for Extension of Time**

As a preliminary matter, the Court finds good cause to extend Defendants' deadline to respond to the R&R, and therefore will grant their motion. The Court will consider Defendants' objections.

**B. Defendants' Objections**

In their motion for summary judgment, Defendants argued that Brooks' claim should be dismissed because he did not avail himself of the MDOC grievance procedures in accordance with the PLRA prior to filing suit. (*See* Defs.' Br. 3, ECF No. 52.) Brooks responded by asserting that he was not required to follow the prison's procedural process for grieving issues due to the emergency brought on by the COVID-19 pandemic. (Pl.'s Resp. Br. 1-2, ECF No. 61.) The magistrate judge, while recognizing that courts do not recognize an emergency exception to the PLRA's exhaustion requirements, recommended that Defendants' motions be denied because they failed to respond to Brooks' claim that the pandemic rendered the MDOC's administrative process categorically unavailable. (R&R 9-12.) Defendants object to the R&R on the basis that the pandemic did not override the MDOC's grievance policy, and that the magistrate judge incorrectly

3

shifted to them the burden of showing the grievance process was available despite the pandemic. (Defs.' Objs. 5.)

### C. Exhaustion

The PLRA requires inmates to exhaust their administrative remedied before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review, and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). Courts have recognized an exception to the exhaustion requirement where "the administrative remedy process is rendered unavailable." *Sango v. Fleury*, Nos. 21-2597/2598/2599, 2022 WL 2163519, *1 (6th Cir. May 4, 2022) (citing *Ross v. Blake*, 578 U.S. 632, 648 (2016)). "For example, exhaustion is not required when the administrative process is so opaque that it becomes, practically speaking, incapable of use or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (internal quotations omitted).

Under MDOC Policy Directive 03.02.130, prisoners must follow a three-step process to exhaust their administrative remedies. First, a prisoner must attempt to resolve their issue with the staff member within two days. (Policy Directive ¶ Q, ECF No. 50-2.) If that fails, the prisoner must file a step I grievance within five business days after the attempt to resolve the issue. (*Id.* ¶¶ Q and S.) The Policy Directive provides the following instructions for filing a Step I grievance,

> [t]he issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e. who, what, when, where, why, how). Dates, times, places *and names* of all those involved in the issue being grieved are to be included.

4

(*Id*. ¶ S (emphasis added).) The prisoner must send the grievance to the appropriate coordinator. (*Id*. ¶ W.) If the prisoner does not receive a response or is dissatisfied with the response he does receive, he must request a Step II grievance form and send it to the Grievance Coordinator. (*Id*. ¶ DD.) Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. (*Id*. ¶ HH.)

Lack of exhaustion is an affirmative defense meaning summary judgment is the appropriate time to determine whether it is available unless its application is apparent from the face of the complaint. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). "Summary judgment is appropriate in this context only if the defendants 'establish the absence of a genuine dispute as to any material fact regarding non-exhaustion.'" *Sango*, 2022 WL 2163519, at *1 (citing *Risher v. Lappin*, 639 F.3d 236, 239 (6th Cir. 2011)) (internal quotations omitted). Since exhaustion is an affirmative defense, the burden is on Defendants to show that an administrative remedy is generally available to the plaintiff and that the plaintiff failed to follow its procedures. However, once such an initial showing has been made, the burden shifts to the plaintiff to show that the process was unavailable by "identify[ing] some evidence supporting his claims." *Ratliff v. Graves*, 761 F. App'x 565, 567 (6th Cir. 2019).

### D. Did the COVID Emergency Relieve Brooks of the Burden of Exhausting his Administrative Remedies?

The magistrate judge found that Brooks' assertion that exhaustion requirements did not apply during the pandemic created an issue of fact to which Defendants did not sufficiently respond. In other words, the magistrate found that Brooks' statement that "Medical situations and [imminent danger] situations such a[s] Covid [are not] required nor bound to pursue an administrative remedy when a[n] administrative remedy [does not exist] for cases of imminent

5

danger that could and did lead to death[,]" was enough to create a factual dispute as to whether the administrative process was available to Brooks despite the pandemic. (*See* R&R 8.) The Court disagrees.

True, at least one court has found there are circumstances where COVID restrictions might render the administrative process unavailable to prisoners. *See Smith v. DeWine*, 476 F. Supp. 3d 635, 656 (S.D. Ohio 2020). However, no court has held that the pandemic created a categorical exception to the PLRA's exhaustion requirements. On the contrary, as the magistrate judge correctly pointed out, the courts in this circuit that have addressed the issue have found that the exhaustion requirement applies to COVID-era complaints. *See, e.g., Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *6 (E.D. Mich. July 18, 2022); *Vorus v. Lewis*, No. 2:22-cv-128, 2023 WL 3128457, at * 6 (W.D. Mich. Mar. 21, 2023) *report and recommendation adopted*, 2023 WL 3120881 (April 21, 2023); *Carson v. Artis*, No. 1:22-cv-260, 2022 WL 195217772, at *3 (W.D. Mich. Nov. 4, 2022) *report and recommendation adopted*, 2023 WL 2967853 (April 17, 2023). As far as the Court is aware, *Smith* is the only case in this circuit in which a court held that COVID-related restrictions on an inmate's access to the MDOC's administrative process *might* have rendered the grievance process unavailable. Further, *Smith* is distinguishable because there the plaintiffs provided factual allegations to support their claim that the grievance process would have been a dead end. For example, plaintiffs alleged that "[g]rievance forms [were] thrown away," and that they "filed grievance after grievance [and] . . . [n]o one did anything." *Smith*, 476 F. Supp 3d at 645. Here, Brooks does not provide any evidence from which the Court might infer that the grievance process was unavailable to him or that he was "thwarted" from gaining access to it. Further, since he never attempted to grieve his issues regarding the MDOC's COVID response, he could not have known that it would have been a dead end. *See, e.g., Napier v. Laurel*

6

*Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011) ("Faced with a policy that was not clearly unavailable, the only way to determine if the process was available, or futile, was to try.")[1]

The Court therefore finds that Brooks' conclusory statement that "Covid-19 [does not] apply to an administrative procedure process" and that administrative remedies do not exist for cases of imminent danger are insufficient to create a genuine issue of fact over whether the grievance process was available despite the pandemic. As a result, the Court declines to adopt the R&R and will next turn to the issue of whether Brooks exhausted his administrative remedies.

### E. Brooks Failed to Exhaust his Administrative Remedies Prior to Filing Suit

The parties do not dispute that Brooks failed to pursue a grievance through Step III of the administrative process as required by MDOC Policy Directive 03.02.130. Indeed, Brooks never even attempted to file a Step I grievance concerning the issues that are the subject of this suit. As a result, he failed to exhaust his administrative remedies as required by the PLRA. Therefore, Defendants' motions will be granted.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for extension of time will be granted. Additionally, Defendants' motion for summary judgment will be granted and Defendants Washington, Burke, Horton, and Gierke will be dismissed. The Court will enter an order consistent with this Opinion.

Dated: April 1, 2024 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] The magistrate judge also devoted significant discussion to Justice Sotomayor's concurrence in *Valentine v. Collier*, 140 S. Ct. 1598 (2020), and her statement that "if a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like [COVID], the procedures may be unavailable to meet the plaintiff's purposes, much in the way they would be if prison officials ignored the grievances entirely." *Id.* at 1600. However, Justice Sotomayor's concurrence does not suggest that prisoners are relieved of the burden of presenting facts or evidence to corroborate a claim that the process was unavailable, or of first attempting to avail themselves of the grievance process before arguing it is unavailable.